```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
SING FON PAN (a/k/a XIN FENG PAN),              17 Civ. 9758

                Petitioner,                     OPINION and
                                                ORDER
        -against-

JEFFERSON BEAUREGARD SESSIONS III, et al.,

                Respondents.
------------------------------------------X
```



A P P E A R A N C E S:

Attorney for Petitioner

THE LAW OFFICE OF THEODORE N. COX
325 Broadway, Suite 201
New York, NY 10007
By: Theodore N. Cox, Esq.

Attorneys for Respondents

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, NY 10007
By: Brandon M. Waterman, Esq.

**Sweet, D.J.**

Petitioner Sing Fon Pan ("Pan" or the "Petitioner"), a native of China, has been detained in Immigration and Customs Enforcement ("ICE") custody pursuant to 8 U.S.C. § 1225(b)(2)(A) since May 17, 2017. Pan has petitioned for a writ of habeas corpus under 28 U.S.C. § 2241 *et seq.*, requesting that his continued detention be found unlawful and that Respondents be ordered to release Pan or, in the alternative, to provide Pan with an individualized bond hearing before an immigration judge.

For the reasons set forth below, the petition is granted to the extent that Respondents are required to hold an individualized bond hearing for Pan within two weeks.

**Prior Proceedings**

Pan is a 37-year-old Chinese native and citizen who arrived at Newark International Airport in October 1998 and sought entry into the United States without a valid passport. Pet. ¶ 19; Resp'ts' Mem. of Law in Opp. ("Opp. Mem.") Ex. 1 ("I-213"), at

1

2. That same day, Pan was paroled into the United States. Pet. ¶ 19; I-213, at 2.[1]

On May 17, 2017, the U.S. Coast Guard encountered Pan while Pan was fishing, at which time Pan was arrested, detained, and turned over to ICE. Pet. ¶ 20; I-213, at 2. That same day, ICE served Pan with a Notice to Appear ("NTA") and commenced removal proceedings, charging Pan as an "arriving alien" and inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I). Pet. ¶ 20; Opp. Mem. Ex. 2 ("NTA").

On May 26, 2017, Pan filed a Request for Release with ICE and a motion for a bond hearing with an immigration judge. Pet. ¶ 21. On June 29, 2017, Pan appeared before an immigration judge and applied for political asylum, withholding of removal, and protection under the Convention Against Torture. Pet. ¶ 22. That same day, Pan had a bond hearing, during which bond was denied

---

[1] For constitutional purposes, although Pan was paroled into the United States for the purpose of prosecution, where he has lived for the past 19 years, he is still treated as though he was stopped at the border. This is an "'entry fiction,' which provides that although aliens seeking admission into the United States may physically be allowed within its borders pending a determination of admissibility, such aliens are legally considered to be detained at the border and hence as never having effected entry into this country." Saleem v. Shanahan, No. 16 Civ. 808 (RA), 2016 WL 4435246, at *1 n.2 (S.D.N.Y. Aug. 22, 2016) (quoting Napoles v. I.N.S., 278 F. Supp. 2d 272, 275 (D. Conn. 2003)).

by the immigration judge on the grounds that the immigration court lacked jurisdiction. Pet. ¶ 23.

On September 1, 2017, the immigration judge denied Pan's application for relief, from which Pan timely appealed to the Board of Immigration Appeals ("BIA") on September 11. Pet. ¶¶ 26-27. As of writing, Pan's appeal remains pending. Pet. ¶ 27.

On October 27, 2017, Pan again filed a motion for a bond hearing pursuant to Lora v. Shanahan, 804 F. 3d 601 (2d Cir. 2015). Pet. ¶ 28. On December 4, 2017, Pan had a Lora bond hearing before a different immigration judge, which denied a bond hearing based on lack of jurisdiction because of Pan's previous bond hearing and previous denial. Pet. ¶ 30.

On December 13, 2017, Pan filed the instant petition, contending that his continued detention without a bond hearing violates the Due Process Clause and seeking relief. Dkt. No. 1. On January 24, 2018, the petition was heard and marked fully submitted.

**Applicable Law**

Section 2241 of Title 28 of the United States Code is the general habeas corpus statute. It "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" Wang v. Ashcroft, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention. Demore v. Kim, 538 U.S. 510, 516-17 (2003). "[J]urisdiction over [28 U.S.C.] § 2241 [habeas] petitions is properly limited to purely legal statutory and constitutional claims and does not extend to review of discretionary determinations" by immigration judges. Chen v. United States Dep't of Justice, 434 F.3d 144, 153 n.5 (2d Cir. 2006) (second and third alteration in original).

Section 1225(b) of Title 8 of the United States Code governs the inspection of aliens seeking admission into the United States, a classification sometimes termed an "arriving aliens." See 8 C.F.R. § 1001.1 ("The term arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry."). Section 1225(b)(2)(A) authorizes the detention of arriving aliens, which includes all

4

non-citizens, including lawful permanent residents ("LPR"), if "the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted . . . for a [removal] proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). Arriving aliens may receive discretionary parole by the Department of Homeland Security, but the statutory regime does not explicitly limit the length of such detention or provide for a bond hearing before an immigration judge. 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5. Section 1225(b) contains no limitation on how long a detention under that provision may last. 8 U.S.C. § 1225(b)(2)(A).

**Pan's Petition is Granted**

The question presented by Pan's petition is the scope and impact of the Second Circuit's decision in Lora v. Shanahan, 804 F. 3d 601 (2d Cir. 2015). Pan asks the Court to apply Lora's holding to his situation and find a six-month, bright-line rule for detentions pursuant to 8 U.S.C. § 1225(b).² See Pet. ¶¶ 56-

---

² As an alternative, Pan asks the Court to find his continued detention "unreasonably prolonged" under the "circumstances of this case" and in violation of his Due Process rights. Pet. ¶ 42. Respondents state that Pan's eight-month detention is reasonable given the necessary removal hearings and Pan's appeals. See Opp. Mem. 16-19. As the Court finds that Lora's bright-line holding applies to Pan statutorily, a fact-specific analysis need not be undertaken.

5

58. Respondents contend that, unlike the petitioner in Lora who was a LPR in the United States, Pan is an "arriving alien" who needs to be treated for constitutional purposes as if stopped at the border, and therefore is not afforded the same constitutional protections. Opp. Mem. 16-19.

The issue of whether indefinite detention under Section 1225(b) violates the Due Process Clause is presently before, but has not yet been resolved by, the Supreme Court and the Second Circuit. See Jennings v. Rodriguez, No. 15-1204, 2016 WL 1182403 (U.S. argued Oct. 20, 2017) (listing as a question presented "[w]hether aliens seeking admission to the United States who are subject to mandatory detention under Section 1225(b) must be afforded bond hearings, with the possibility of release into the United States, if detention lasts six months"); Arias v. Aviles, No. 16-3186 (2d Cir. filed Sept. 12, 2016) (proceedings stayed pending the outcome of Jennings). As a general course of conduct, this Court agrees with others in the circuit that staying a decision pending additional guidance from the Supreme Court or Second Circuit is sensible. Given the issue of prolonged deprivation of liberty that Pan raises in his petition, however, to elect to delay decision an indeterminate period while waiting for a future ruling is "inappropriate." Ahmed v. Decker, No. 17 Civ. 478 (AJN), 2017 WL 6049387, at *1 &

n.1 (S.D.N.Y. Dec. 4, 2017) (citing Osias v. Decker, No. 17 Civ. 2786 (VEC), 2017 WL 3242332, at *1 n.3 (S.D.N.Y. July 28, 2017), vacated No. 17 Civ. 2786 (VEC), 2017 WL 3432685 (S.D.N.Y. Aug. 9, 2017)). Accordingly, Pan's petition warrants immediate review.

The Second Circuit's decision in Lora undergirds Pan's petition and is a necessary starting point of analysis. In Lora, the Second Circuit considered whether Lora, an LPR and citizen of the Dominican Republic, could be detained indefinitely under 8 U.S.C. § 1226(c), which mandates detention during the removal proceedings of non-citizens convicted of certain criminal offenses. See 804 F.3d at 613-16. The Lora court found that Section 1226(c) "contain[ed] no explicit provision for bail." Id. at 604. However, the circuit court considered the statute in light of Supreme Court precedent, which had previously held "that, for detention under the statute [Section 1226(c)] to be reasonable, it must be for a brief period of time." Id. at 614 (citing Demore, 538 U.S. at 528); see also id. at 606 (alterations in original) (quoting Zadvydas, 533 U.S. at 682, 690) (observing that the Supreme Court has stated that "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.'"). Therefore,

7

to avoid "serious constitutional concerns" from indefinite detention, the Second Circuit found that there must "be some procedural safeguard in place for immigrants detained for months without a hearing" under Lora's detention statute. Id. at 614. Following the lead of the Ninth Circuit in Rodriguez v. Robbins, 715 F.3d 1127, 1131 (9th Cir. 2013) ("Rodriguez II"), the Second Circuit applied "a bright-line rule to cases of mandatory detention where the government's 'statutory mandatory detention authority under Section 1226(c) . . . [is] limited to a six-month period, subject to a finding of flight risk or dangerousness.'" Id. at 614 (quoting Rodriguez II, 715 F.3d at 1133). The Second Circuit declined to adopt the approach of other circuits that analyzed the reasonableness of each individual's detention, concluding that a bright-line rule is preferable because it "ensures that similarly situated detainees receive similar treatment." Id. at 615.

In the wake of Lora, district courts in this circuit have found that the Lora court's due process considerations for the detention of LRPs pursuant to Section 1226(c) extends to the detention of LRP and other non-citizen pursuant to Section 1225(b). See Abdi v. Duke, No. 17 Civ. 721 (EAW), 2017 WL 5599521, at *12 (W.D.N.Y. Nov. 17, 2017) (Wolford, J.); Ahmed v. Decker, No. 17 Civ. 478 (AJN) (GWG), 2017 WL 6034647, at *6

8

(S.D.N.Y. Aug. 15, 2017) (Gorenstein, M.J.), report and recommendation adopted, No. 17 Civ. 478 (AJN), 2017 WL 6049387 (S.D.N.Y. Dec. 4, 2017) (Nathan, J.); Osias, 2017 WL 3242332, at *6 (Caproni, J.); Galo-Espinal v. Decker, No. 17 Civ. 3492 (AKH), 2017 WL 4334004 (S.D.N.Y. June 30, 2017) (Hellerstein, J.); Morris v. Decker, No. 17 Civ. 2224 (VEC), 2017 WL 1968314, at *3 (S.D.N.Y. May 11, 2017) (Caproni, J.); Heredia v. Shanahan, 245 F. Supp. 3d 521, 526-27 (S.D.N.Y. Mar. 28, 2017) (Wood, J.); Ricketts v. Simonse, 16 Civ. 6662 (LGS), 2016 WL 7335675, at *1 (S.D.N.Y. Dec. 16, 2016) (Schofield, J.); Saleem v. Shanahan, No. 16 Civ. 808 (RA), 2016 WL 4435246, at *5 (S.D.N.Y. Aug. 22, 2016) (Abrams, J.); Arias v. Aviles, No. 15 Civ. 9249 (RA), 2016 WL 3906738, at *10 (S.D.N.Y. July 14, 2016) (Abrams, J.).

Respondent argues that this Court should decline to join this growing consensus amongst our sister courts and find that Lora does not apply to Pan's statutory situation. Under Respondents' theory, because the petitioner in Lora was a different statutory classification of alien than Pan—Lora was an LPR, already in the country, and detained under Section 1226(c)— the due process to which the petitioner in Lora was entitled has no bearing to Pan, a detainee who lacks lawful status and, constitutionally-speaking, has never gained admission to the

9

United States. Respondents cite authority which identify "distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." Zadvydas v. Davis, 533 U.S. 678, 693 (2001) (citations omitted); see also Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953) (citations omitted) (stating that "an alien on the threshold of initial entry stands on a different footing" from an alien who has already entered the country). However, that does not mean that aliens outside the United States' borders are entitled to no due process rights, as opposed to aliens already in the United States, who are given the "traditional standards of fairness encompassed in due process of law." Mezei, 345 U.S. at 212. Those detained at the border are limited to "[w]hatever the procedure authorized by Congress is." Id. (citation omitted).

Two district courts in this circuit have issued opinions in accord with the Government's narrow reading of Lora. See Cardona v. Nalls-Castillo, 177 F. Supp. 3d 815 (S.D.N.Y. 2016) (Scheindlin, J.); Perez v. Aviles, 188 F. Supp. 3d 328 (S.D.N.Y. 2016) (Keenan, J.). In Cardona, the court found, without further analysis, that because Lora only addressed detentions under Section 1226(c), it did not extend to detentions under Section 1225(b). See Cardona, 117 F. Supp. 3d at 816. In Perez, the

10

court could not find any authority in the circuit extending Lora to Section 1225(b) and denied habeas relief. See Perez, 188 F. Supp. 3d at 332. These decisions, issued prior to the more recent and constitutionally analytical opinions of courts in the circuit, are in the minority.

By contrast, the reasoning of Judge Abrams, who has twice dealt with how to apply Lora to other kinds of alien detentions, is persuasive. In Arias v. Aviles, Judge Abrams found that Lora's reasoning applied to an LPR detained under Section 1225(b), since although the petitioner in Arias had briefly traveled abroad, he still possessed "the same due process protections enjoyed by continuously present LPRs." Arias, 2016 WL 3906738, at *8 (citation omitted). As such, because Lora created a bright-line six-month rule under the canon of constitutional avoidance for continuously-present LPRs to be entitled to a bond hearing, the same protection needed to be afforded to LPRs detained under Section 1225(b) because otherwise it "could result in affording more protections to non-resident aliens detained under section 1226(c), and for whom removal is authorized by law, than to LPRs detained pursuant to § 1225(b) and merely accused of wrongdoing." Id., 2016 WL 3906738, at *9 (alteration and emphasis in original) (citing Rodriguez II, 715 F.3d at 1143 ("[I]f anything it would appear

11

that the LPRs who fall within § 1225(b)'s purview should enjoy <u>greater</u> constitutional protections than criminal aliens who have already failed to win relief in their removal proceedings.")).

Judge Abrams later extended her reasoning in Arias to non-resident arriving aliens detained under Section 1225(b). <u>Saleem v. Shanahan</u>, 2016 WL 4435246, at *4. Following the Supreme Court's opinion in <u>Clark v. Martinez</u>, 543 U.S. 371 (2005), which held that once the doctrine of constitutional avoidance is used to interpret a statute, it controls all applications of the statute, see <u>id.</u> at 380-81, the <u>Saleem</u> court found that as Section 1225(b) makes no distinction between LPRs and non-resident aliens, protections construed to apply to the former also need to apply to the latter. See <u>Saleem</u>, 2016 WL 4435246, at *4 (citing <u>Clark</u>, 543 U.S. at 380-81); <u>see also</u> <u>Clark</u>, 543 U.S. at 380-81 ("[W]hen deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail—whether or not those constitutional problems pertain to the particular litigant before the Court."); <u>Ahmed</u>, 2017 WL 6034647, at *5 (detailing the statutory interplay where LPRs detained under Section 1225(b) are detained under the indefinite

12

detention provision discussed in Lora). Judge Abrams reasoned that, because Section 1225(b) needed to be construed with Lora's six-month bright-line to protect "certain LPRs," it must also be applied "consistently to [non-LPR aliens like the petitioner held under Section 1225(b)(2)(A)] irrespective of 'whether or not those constitutional problems pertain to the particular litigant.'" Id. (quoting Clark, 543 U.S. at 381); see also Ahmed, 2017 WL 6049387, at *8 (emphasis in original) (holding that because "constitutional avoidance is a tool of statutory construction . . . detention pursuant to section 1225(b) without an individualized bond hearing must have an implicit six-month limit . . . for all aliens seeking admission regardless of their status").

Even if Respondents are correct that fewer due process rights are owed petitioners like Pan than the petitioner in Lora, the statutory provisions laid down by Congress control. The Lora court found that Section 1226(c) "must be read as including an implicit temporal limitation" to "avoid serious constitutional concerns," a reading that applies to all aliens for whom Section 1226(c)'s indefinite detention provision applies—which includes those detained under Section 1225(b) such as Pan. Lora, 804 F.3d at 614 (emphasis added). To find otherwise would unfaithfully apply Lora's "logical conclusion."

13

Ahmed, 2017 WL 6034647, at *5 (finding that "Lora must control the indefinite detention provision in section 1225(b)(1)" and that "[b]ecause the detention aspect of section 1225(b)(1) could apply to both LPRs and undocumented arriving aliens seeking admission, it must be read to be identical for both classes of aliens").

This reading is also supported by the Ninth Circuit's decision in Rodriguez. There, in a class action of non-citizens challenging their prolonged detentions without individualized bond hearings, the Ninth Circuit also construed Section 1225(b) to contain a six-month limitation because there was a "mere possibility that DHS could detain LPRs pursuant to it." Saleem, 2016 WL 4435246, at *4 (emphasis in original) (citing Rodriguez II, 715 F.3d at 1142); see also Rodriguez v. Robbins, 804 F.3d 1060, 1082-83 (9th Cir. 2015) ("Rodriguez III") (affirming the court's holding in Rodriguez II and stating that "even if the majority of prolonged detentions under § 1225(b) are constitutionally permissible" because the alien is a non-citizen seeking admission at the border, if one possible application of the statute requires due process protections, the statutory scheme of Section 1225(b) requires "a bond hearing after six months of detention"), cert. granted sub nom. Jennings v. Rodriguez, 136 S. Ct. 2489 (U.S. 2016).

14

As articulated by Judge Abrams, to avoid constitutional concerns, Section 1225(b) will be read to include a six-month limitation on the length of detention of non-citizen arriving aliens like Pan without an individualized bond hearing.

Respondents contend that the Court should defer to the "broad power" of the political branches in deciding immigration policy, particularly at the border, and that the courts should not upset the statutory scheme created by Congress. See Opp. Mem. 7-12. However, the political branches' "plenary power" to create different laws for different kinds of aliens neither places those laws beyond "important constitutional limitations" nor eliminates the need to apply uniformly those laws as construed to detainees. Zadvydas, 533 U.S. at 695; see Morris, 2017 WL 1968314, at *4 ("This Court is not questioning the political branches' power to admit or remove immigrants; rather, this Court holds only that LPRs detained pending removal proceedings are entitled to certain due process protections, including the availability of an individualized bond hearing if the detention is prolonged.").

Respondents contend that the holdings in Rodriguez and courts in this circuit who have cited it in support should be

15

rejected because Rodriguez was "a class action" and considered the potential of a member of the "certified § 1225(b) subclass" to warrant constitutional protection, unlike the situation here. Opp. Mem. 12-13. However, in Rodriguez, the court held that to apply the constitutional avoidance doctrine required finding that "one possible application of a statute raises constitutional concerns." Rodriguez III, 804 F.3d at 1082 (emphasis added). As described above, Section 1225(b) could apply to a group found by the Lora court to require additional protection, and that protection must flow to all others to whom the statute applies. See Saleem, 2016 WL 4435246, at *4 (alteration in original) (quoting Clark, 543 U.S. at 382) ("To interpret the statute one way for LPRs and another way for non-resident arriving aliens 'would render [the] statute a chameleon, its meaning subject to change depending on the presence or absence of constitutional concerns in each individual case.'").

Respondents contend the canon of constitutional avoidance should not to be used to construe a six-month limitation on a statute that does not otherwise possess it. See Opp. Mem. 15-16. However, the Supreme Court has employed the canon of constitutional avoidance to create a six-month limitation on detentions without a bond hearing for a section of the INA. See

16

Zadvydas, 533 U.S. at 690, 701, 705. The Second Circuit in Lora did the same for a different section of the INA. See Lora, 804 F.3d at 613. No compelling reason has been presented why the canon's application is suddenly inappropriate.

Lastly, Respondents contend that Pan's detention does not violate due process because the detention of aliens like Pan serves a valid statutory purpose and, in Pan's case, the length of his proceedings has been reasonable and, in part, a byproduct of his choice to appeal his removal order. See Opp. Mem. 16-19. As other courts have also noted, the concern with statutory indefinite detention is not in "the Government's authority to detain Petitioner" but rather "the length of Petitioner's detention without an individualized bond hearing." Morris, 2017 WL 1968314, at *5. And as Lora proscribes the creation of a six-month bright-line rule, a threshold Pan's detention has already crossed, the particulars of his detention are not necessary to adjudicate his petition. See Lora, 804 F.3d at 615.

Pan should not have to make a choice between seeking relief through the appeals process or the possibility of indefinite detention without the prospect of review. See Zadvydas, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the

17

heart of the liberty that [the Due Process] Clause protects.").
Due process does not need to be a zero-sum game. Pan has been
detained for over eight months and counting; pursuant to the
reasoning and principles laid out in <u>Lora</u>, he is entitled to an
individualized bond hearing.

**Conclusion**

For the reasons set forth above, the petition is granted to the extent it requires Respondents to provide Pan a prompt individualized bail hearing before an immigration judge. There, Pan "must be admitted to bail unless the government establishes by clear and convincing evidence that the immigrant poses a risk of flight or a risk of danger to the community." Lora, 804 F.3d at 616. Respondents are to provide Pan with an individualized bond hearing within two weeks of this Opinion and Order.

It is so ordered.

**New York, NY**
**February 7, 2018**

_____
ROBERT W. SWEET
U.S.D.J.